Would the clerk call the next case please? 3-2-2-0-3-9-2. John Kieken, Applee cross appellant versus City of Joliet, appellant cross Applee. Thank you. Good morning. Morning. Mr. Lindsey, would you like to start? Yes, thank you. My name is Todd Lindsey, L-E-N-Z-I-E. I'm arguing on behalf of the City of Joliet and may it please the court. This case has one issue that has two subsections. The first is basically is the plaintiff entitled to attorney's fees for a four-year case under 5 ILCS 140-11I. And once you decide that, did the trial court abuse its discretion by awarding attorney Linden $14,980, attorney Bustamante $437.50, and attorney Fioretti $5,325 for a total of $20,742.50 and there was some filing fees. The background of this case is on November 15th, 2021. Mr. Kieken submitted a FOIA request to the City of Joliet for traffic studies for various locations, North Point Development, Compass Business Park being two of them. Joliet denied that FOIA request four days later on November 19th, 2021. Its reasons were they were preliminary materials under 5 ILCS 140-71F. In response, Mr. Kieken filed a complaint for declaratory judgment for injunctive relief and declaratory judgment on 12-7. What happened is according to Mr. Linden's billing statements on 12-8, he had a roughly 15-minute conversation with attorneys from the City of Joliet. After that conversation and before the first court date, Joliet tendered the traffic studies. In the process on the first court date, the trial court found, denied the plaintiff's motion to turn over documents as it was moot and these documents were already turned over. So there was no court order requiring the City of Joliet to turn over the documents. Joliet did this before the first court date. What was the date of the court date, Mr. Lindsey? I'm not sure what the exact date was. It was a couple months after this. It got motioned up because the plaintiff filed a TRO in addition to this. I believe that was on 12-8, but I don't have that in my notes, so I apologize for that. But it was in December and what was clear was these documents were turned over even before that court date and the trial court found it was moot. Their complaint was moot and it was dismissed. Well, can I just ask you a question? Sure. The idea that there was not a court order, I mean, can you not conceive of the possibility of tremendous gamesmanship on the part of possible governmental entities if we require a court order in the strict sense as you're interpreting it? And what I'm saying is essentially this, that someone asks, makes a FOIA request, the city doesn't want to give it for whatever reason, and someone files a suit and then a couple of months go by and finally the city tenders it, but all these expenses have been ongoing and the court says, well, now there's no dispute. I'm going to dismiss the case. I mean, to require a court order seems to invite that type of gamesmanship and isn't that contrary to the intent of the statute? I would agree with you on that, but in this case, the distinguishing factor is a couple months did not go by. The city, once we talked to the plaintiffs, we turned over those documents. One of the cases I'd like to refer you to... That would go to the questions of mitigation and the reasonableness of attorney's fees, but not the fact whether there should be attorney's fees. Would that be fair? Well, what I'd like to refer you to is Edgar County Watchdogs versus Let me flip to the right page. The third district indicated that even if the FOIA statute isn't to open the floodgates for a litigant, materials are not to receive attorney's fees. You might be entitled to it, but that's not the end of the discussion. The case indicates thus to prevail under the current version of FOIA, four requirements must be met. A lawsuit against the public entity, the documents production, the lawsuit to have caused the production of the documents, and the lawsuit to have been reasonably necessary to obtain those documents. What I'm arguing is the third and fourth factors, the court order would go a long way to show that that lawsuit was necessary. The facts in Edgar County aren't particularly on point. In that case, there was an ambiguous request made in the FOIA and one phone call would have cleared that up. This is a little different, right? I mean, there was no ambiguity in terms of the FOIA request here. There may have been a it was exempt because of the state stage of the process, but there was no ambiguity in terms of the request. I would agree with that. Mr. Lindsey, would you also agree that the order that was entered in fact said the documents having been tendered, the issue is moot. So the court acknowledged that the documents were in fact tendered and that statement is in fact in a court order. I would agree with that. I would agree with that. But what I would counter is in Edgar County, all that was required was a brief phone call. A complaint wasn't necessary. The plaintiff could have filed also for a PAC review. What the case law indicates was the lawsuit was necessary for the production of those documents and it just wasn't in this case. The lawsuit was going to the most complicated outcome of the case. Municipalities are not to be punished because we have to determine if this is a deliberative process or not and it's a very technical. They could have picked up the phone and called us. My argument is what Edgar County was saying is that could have been done before the complaint was filed. Really what this was was the plaintiff was filing the complaint not for the FOIA because their temporary restraining order wanted to stay the city council proceedings which is not authorized under the FOIA statute and that was their real goal. Even after the documents were tendered, they still asked for that. They still billed for those two things and that's what I'm trying to argue here is that was the crux of what was going on here is the city council meeting not the FOIA. I see a reasonable argument as it relates to this TRO request but let's set that aside for a moment. Is there any case law you can present us with where parties have to pursue a PAC review first? No, that is a novel argument on my behalf. I get it but there's nothing out there, right? No, and what I'm arguing is the Edgar County case is necessary and my argument is it wasn't necessary because there were other options. There were other cheaper options that would prevent this litigation from going forward and even after you get a PAC review, that doesn't mean you still can't file the complaint for you. You get the answer from the attorney general and then you can proceed from there. They chose to go right over that step. That would have been the quickest, easiest way to resolve this but that's not what they wanted primarily because the plaintiff wanted the city council meeting stayed. That was the point that you can't do that under a PAC review but you can under what were trying to do here. Not because of FOIA but because of other reasons and the trial court ultimately found that the state of the city council meeting was not a remedy authorized by FOIA and they still billed for that and the second part of my argument is that TRO, anything related to the TRO or the injunction, the trial court abuses discretion in giving fees for that because FOIA statute does not say that the judge can do that. Let me have just a moment please. One other thing that I wish to point out is the trial court did not find um a civil penalty under 5 ILCS 140 backslash 11J. The trial court did not find there was any evidence that the city acted in a willful and want behavior in denying this motion, did not find that there was any other reason, nefarious reason from the city of Joliet and that goes back to justice's first point of the gamesmanship. What the trial court could do and what the FOIA statute contemplates under 11J is exactly that scenario is if there's gamesmanship the trial court can appoint or can give a civil penalty. The trial court here specifically declined to do so so there was no willful intent, there was no gamesmanship by the city of Joliet and I would say that's evidence too by how quickly we turned over the documents once that suit was filed. Mr. Lindsey, Mr. Lindsey, drawing your attention to November 19th when you denied, didn't you indicate or didn't Joliet deny that there were any such documents to turn over? I believe what I said was there was no environmental studies if I remember correctly. I'm not sure if I remember exactly what you're speaking of but I didn't, I don't believe that we're talking about that. They also asked for environmental studies. Did they cite the deliberative process exemption and that was the basis for the denial? Yes, I believe that's what it was. Deliberative process exemption too, this traffic study went to an outside third party and there's times that the outside third party can still be covered by the deliberative process. It's the case that I'm going to refer to is Harward versus McDonough. It's a first district case 344 11 Illinois Ave 3rd 242 where it says the pivotal fact that remains constant each case in which the exemption has been extended to consultant's document is that the consultant does not represent interest of its own and also that's this was prepared by North Point and it's a technical distinction that the city has to use its best discretion in trying to figure out whether that applies or not. A quick phone call from Mr. Linden, 15-20 minutes is what he billed for. That solved that. It solved it really quick. The lawsuit was not necessary. There was other county case, they should not be entitled to any kind of rule, any kind of attorney fees because of that and in the alternative, I do acknowledge that this is an abusive discretion standard. It's no reasonable person could find anything different, especially with the amount of attorneys fees that were ultimately imposed by the trial court. The city and we were arguing over the amount of fees and the hourly rate, we did submit an affidavit from a local attorney here in Joliet. He has been licensed since 1997, practices municipal law FOIA. His hourly rate was 300 for private and 145 to 210 for public sector clients. What they asked for, Keegan and Mr. Linden supplied their billing records, they said the plaintiff was never going to pay. It's not really relevant what he agreed to pay because he had no intent to pay that hourly rate. I believe what the judge did in assigning his hourly rate on this was excessive and what you need to look at was, was it reasonable? This is a FOIA case that resolved fairly quickly. We turned the documents over fairly quickly. The amount that the city would be ordered to pay isn't an amount that should punish the city and that's what the case law indicates. It's just that the plaintiff can execute the FOIA, execute the statute and get the city to turn over those after that original turnover date should not be supplied. Looks like I'm running out of time. In conclusion, I'd ask you to not grant any attorney fees and if you do, a reasonable rate. Thank you. Thank you, Mr. Lindsay. Mr. Linden. Good afternoon, Justices. For the record, Richard Linden on behalf of the plaintiff, along with Bob Fioretti and Peter Bustamante. There's a number of things that I had a whole outline and I'm going to jump probably all over the place based on Mr. Lindsay's argument. But I don't know where he's coming up with this telephone conversation where I had from a billing record where they agreed to produce the documents. They didn't agree to anything really until we filed a motion for temporary screening order. We filed this lawsuit, I believe, on December 3rd, 2021 based on a denial. They never offered any documents before then. And Mr. Lindsay says, oh, we could have made a phone call and did it. They just denied the request outright. And there's no basis whatsoever for the deliberative process privilege. And I can direct the court. I didn't think that was really an issue in this appeal. But the Chicago Tribune case we cited in lower court, and I'm not sure if we cited in our brief, versus Cook County Assessor's Office, 2018, 1st, 17455. And that shows that a traffic study by a third party, there's nothing about deliberative process privilege. I mean, Joliet just proceeded with this massive, massive project for 10,000 trucks a day. And it took a lawsuit and a motion for temporary screening order to find out they had no traffic study and they had no environmental study. So this is an immense benefit to the public. And for the Joliet to almost try and claim that they're innocent here, that it's not true. We filed their motion for temporary screening order on December 7th. They produced the last documents in absolute traffic study the following day and December 8th on the day of the hearing. And Mr. Lindsey is good, he knows why we filed the TRO, which he doesn't. We wanted the documents was our main purpose of filing a TRO. It didn't hurt to request, it was a reasonable request in joining the city council hearing until they produced the traffic studies. On the day of the hearing, we find out there aren't any traffic studies. And really what's bizarre about the no traffic studies is shortly before this, Joliet tabled a vote for a Dunkin Donuts drive-thru. And the reason why they tabled the vote was Dunkin Donuts didn't have a traffic study or viable one. Here it's a billion dollar project adding a thousand trucks a day to the roadways. And it took a motion for temporary screening order to find out that it was proceeding without a traffic study and without an environmental study. I wouldn't say it was a throwaway argument asked that the city council hearing be enjoined, but the main impetus for us filing the TRO was to get the documents. It wasn't until the TRO was set to be heard that Joliet finally fessed up and said we don't have any. They tendered some obsolete two or three-year-old traffic study that they admit is obsolete. So this is a, the lawsuit is circuit court found was reasonably necessary for us to obtain the information, the stuff, but a phone call from a billing record, there's no affidavit from Mr. Regis, a corp council for Joliet, showing that he said anything on this phone call about producing a document. I mean it's not in the briefs and I think that argument should be waived. But what one preliminary issue that I should address is argument that the brief and the appeal should be dismissed that in their brief, if you notice, there's not one single citation to the record, not in the statement of facts, not in the argument, and that completely violates I think the Supreme Court rule 347. As our Supreme Court teaches, it's, you know, the rules are not advisory. It's not up to Joliet to pick and choose if they're going to comply with the rule. It was completely no justification and no excuse for them filing a brief with no records to the citation. And it seems like Joliet, I know a lot of our brief, you know, we filed their brief and the day after our brief was filed, this court decided Edgar County Watchdogs, which when we filed the brief, there's a question about whether or not the court should follow Rock River, the Uptown case and the court made up its mind and a day after we filed their brief, it seems like Mr. Lindsey concedes that a court order is not required. So yeah, I believe Joliet should withdraw its argument that a court order is required in order to be eligible for fees under section 11 of FOIA. Can I ask a question as it relates to the reasonableness of some of the fees? Is there any published case law that stands for the proposition that a court could ever enjoin a city or public body from having a hearing? I don't, but I think it was reasonable. I think Court of Equity, I mean, there's a lot of cases. Well, what about the First Amendment? I mean, if there isn't a single case you can point to indicating that this has ever happened, it would seem to be a equitable reach, to put it politely, to enjoin a city from having a council. Is there any case law that you're aware of that would ever allow a court to do that? I don't have a case offhand, but we weren't trying to stop it forever. We're just trying to pause. Is there any case law allowing it to be a stop for a minute ever? I mean, and that's not a rhetorical question. I haven't looked, but I'd be surprised if I found one. I don't know of any, Your Honor, and the main reason for filing was really to get the documents. I hate to say I didn't expect to win on enjoining it. I thought it was a reasonable request, given that they're going to have a public hearing and the public had a right to know whether or not they had any traffic or environmental study. So I think it would have been reasonable to find out, but it kind of became moot when they gave us documents. We were able to find out that there was an outrageous proceeding without a traffic study. So it really wasn't the main purpose, and I know there's a lot of case law saying that if you don't win every aspect of your suit, you can't go through and say, well, you lost this one. You have to look at the overall. Was it beneficial to the lawsuit in general? I do think the TRO was successful. The TRO forced them to show us their hands and surrender the documents and admit they had any. So I think, you know, part of our cross appeal says it was an abuse of discretion to discount any of the TRO time, and the reason being that it was overall successful, I'd contend, that it did produce the desired result. And it was an important aspect of this case that there's no evidence that Juliet ever would have produced anything if it wasn't for this lawsuit and the TRO. But can I answer anything else, Judge? No, thank you. Okay, thank you. And I think the court hit on it where if you require a court order, and I'm not sure if that's still at issue in this appeal given Mr. Lindsey's apparent concession that it's not required, but it would lend its hand to gamesmanship and abuse from government officials that there'd be no incentive to ever comply with the FOIA request. I think it's common knowledge that most people aren't going to file a lawsuit if they get a FOIA case application denied. It's just not going to be cost effective for the average citizen, and there's really no disincentive. All government entity has to do is sit back and wait and see if somebody files suit. Even then, they could sit back and wait until the eve before a court issues an order and say, well, here are the documents, no harm, no foul. But there is a harm and there is a foul. There's a substantial amount of money expended in legal fees for a lot of cases. Mr. Lindsey stated that I admitted Mr. Keegan wasn't going to pay. That's not what it was. We acknowledge that Mr. Keegan doesn't have the 99.99% of the population to pay attorney fees in these amounts to pursue a FOIA application. In 99% of these cases and civil rights cases, lawyers rely upon the fee-shifting statute, and that gives incentive. It benefits the public by exposing government corruption and allowing people to fight and give an incentive for lawyers without attorney fees. The average person is not going to spend thousands of dollars for a lawyer to fight a wrongful FOIA denial. In this case, this court in Edgar County Watchdogs set forth the elements necessary to improve attorney fees, and there's no basis to say the trial court abused its discretion. Even though Edgar County wasn't decided at the time the trial court made its ruling, the court in essence followed the requirements of Edgar County based upon downtown uptown. Elements are, number one, the lawsuit's got to be against public entity, which obviously we have here. Number two, the documents production. We have the document production here. The lawsuit caused the production of the documents. The trial court was correct that the lawsuit was the catalyst or the impetus for Joliet surrounding the documents. For Joliet to get up here now and just say, oh, it just would have taken a phone call and we're good people, we would have turned over the documents, that's really nonsense. There's no evidence in the record to support that theory and that claim here. The circuit court did find that the lawsuit was reasonably necessary for us to obtain the obsolete traffic studies to learn that they had no traffic studies in environmental studies. There really isn't a basis to contend that the trial court abused its discretion in finding that the plaintiffs were, number one, eligible for fees. The amount of fees the trial court awarded cannot be said to be an abuse of discretion. If I could just shift a little bit to our cross-appeal, there's a number of things that we take issue with, number one being the hourly fee set. The court reduced my hourly fee from $650 an hour to $350 an hour and Mr. Fioretti from $675 to $375 an hour. We submitted, we set forth in a brief the evidence we submitted. We had affidavits from myself, Peter Bustamante, Mr. Fioretti. We had representation agreements with John Keegan. We had affidavits from Mitchell Katten and Elizabeth Hubbard who lays out their qualifications, their knowledge about my practice and my abilities and my experience. They each attest that the fees sought or proffered to the circuit court were reasonable based on the community. The only reason cited by the trial court was the hourly fees seem much greater than what's charged in Juliet. We set forth in our brief that Juliet is still considered to be part of the Chicago metropolitan area. I think it's unfair to say to differentiate between hourly fees charged in Chicago and hourly fees charged in Juliet. It's a part of the same community and there's a case law saying that you can't reduce a lawyer's hourly rate just because he goes to a different area with lower rates and we cite that case and I know in our reply brief in support of our cross appeal. We also cite the Chicago Tribune versus Cook County Assessor's 55 and it was Winston and Strong but they in a FOIA case with a similar deliberative process objection or exemption claimed they approved $750 in a FOIA case. We also cite the Laffey Matrix and Adjusted Laffey Matrix. I'm not saying the Laffey Matrix is determinative but is one piece of evidence along with all the other evidence. We cite federal cases regarding the Lodestar which is pretty much the method used for attorney fees under FOIA and once a movement comes forward with hourly rate the burden shifts to the respondent to you know establish a lower hourly rate which Juliet produced no evidence to the contrary credible evidence I should say. The only evidence they produced was an affidavit I believe from Carl Buck or Bob Buck then Carl Buck. He's a sole practitioner in Joliet and he charges $300 an hour based on his affidavit. The fact that one lawyer in Joliet charges $300 does not refute the evidence that we submitted establishing the market rate. Just because Mr. Buck charges $300 an hour I'm sure we could have gotten a lawyer in Joliet that charges $1,200 an hour but that established a market rate. Mr. Buck has no he doesn't attest at all what other lawyers charge what the prevailing rate is in Joliet let alone the Chicago metropolitan area so we believe the trial court based on you know the shifting burden abused its discretion in reducing our hourly fee when Joliet proves no counter evidence credible. And there's two other aspects that we believe the trial court abused its discretion. I talked about the motion for temporary restraining order the trial court reduced those fees by 50 percent but again the TRO was successful. The only reason they reduced its site in the record is because we lost restraining the city council from hearing. That doesn't mean the TRO didn't serve a legitimate purpose and it didn't contribute to the overall success of our lawsuit. The TRO sought the production of traffic studies and we obtained that by the TRO on the day of the hearing they said okay here here the traffic study and that's why the case was dismissed as moved. The other aspect was I believe Mr. Linden excuse me your time is up. Okay I apologize I want to I'm happy to try and answer them for you. Are there any additional questions for Mr. Linden? Not for me. Mr. Lindsay? Yes thank you. To address the that I didn't cite successfully Mr. Linden's right but to strike my argument would be a harsh remedy. I believe with both all briefs and the these facts are pretty straightforward the court can come to a determination on this case so I'd ask you not to strike my argument. The proper fees to be awarded the case law is pretty clear it should be reasonable and they should not go to punishing the city. Mr. Linden takes issue with Mr. Buck's affidavit. Mr. Buck's not a solo practitioner he's a partner at a local Joliet law firm. Rathburn, Serviac and Kozel he's been an attorney since 1999 he's a felony prosecutor at the state's attorney's office. He represents other local municipalities. He was a he was an adjunct professor at John Marshall and their moot court competition are so I believe saying that we presented no evidence on market rate for Joliet is ridiculous. Mr. Buck is an accredited attorney he's a partner at a pretty large local law firm so I believe we did present evidence of what the proper market rate is for Joliet. Mr. Linden did not his affidavits from I think it was Catton and Hubbard I might be messing those names up so I apologize for that but they were they were in other cases if you look at them they actually have the federal case number on them. This is a FOIA case in Joliet not a federal case in in downtown Chicago so what they're asking for on their hourly rates is just not reasonable and the only way that you could give those hourly rates is to punish the city of Joliet which is not what the FOIA statute is meant for. And when I brought up that they were never going to receive that amount of money from Mr. Keekin what I meant by that is it's the reasonablest argument and they could they could put a thousand dollars on there if Mr. Keekin's not going to pay it he's going to sign whatever. Mr. Linden orally admits that he did not have the wherewithal to pay that amount of money. That's their the amount that they cite the amount that they cite that Mr. Keekin was going to pay is just of no relevance what what your determination should be is reasonableness on what the city should pay and that's if you decide on any attorney fees whatsoever. And as to my admitting that a court order is not required well it does look like the the case law has doesn't really speak to court orders being required but as to my argument that they have to prove the lawsuit went to having the documents produced and Mr. Linden what's curious is he indicates Joliet didn't have the documents he said an obsolete traffic study so I'm at this point that's news to me I don't know what we violated if we didn't have the traffic studies but the court order would prove that that lawsuit was required for the documents production and that the lawsuit caused the production of the documents that's what the court order would go to and that's where my my argument goes to Mr. Linden would when you speak to the reasonableness of the fees he mentions other cases they one other case and I forget the name though he said but that had to do with deliberative process that case with Winston and Strawn they had depositions they had a lot more litigation steps this case merely dealt with we turned over the document pretty quickly and then everything else went to fees more than half of what they billed for was to bill which is not reasonable to conclude I don't believe attorney fees under the FOIA statute are warranted the TRO is not a warranted remedy it's not authorized by the FOIA statute maybe something else maybe in some other case which what they should have been filed under but they're asking for under the FOIA statute and I don't believe that's reasonable and the amount that was authorized by the court was also not reasonable thank you thank you Mr. Lindsay Mr. Linden thank you judge I'm not going to go too long I think we've kind of covered this both of us but regarding attorney Buck I'm not questioning Mr. Buck's credentials or credibility he might be the finest lawyer ever but my point Mr. Buck is not you know his abilities but you can't look at one lawyer and what that one lawyer charge and say that's a market rate I was careful I didn't say Juliet presented no evidence I said they presented no credible evidence for market rate because when you have an affidavit from one lawyer not attesting to what the market rate is just what his personal rate is that that's same thing as if I'm polling for the presidential race and I go out and ask one voter who are you going to vote for and say you know that establishes who's going to win an election that's just you know not the way things are done you can't establish a market rate with one lawyer and we attach affidavits from Mitchell Catton and Elizabeth Hubbard who are you could look at two prominent lawyers in Chicago that practice complex civil rights cases which I do a lot of my practice is that and those are affidavits submitted about the same time in support of a fee petition in a ADA case and I won and there's no authority Mr. Lindsey saying that there should be a different lower hourly rate or a higher hourly rate for an ADA case versus a FOIA case time is time this FOIA case was not easy there is issues involved you know the time was spent all I can say is each and every hour I spent I spent on the case I don't know how many hours Mr. Lindsey thinks is reasonable he hasn't indicated how many hours Joliet spent defending this case so all I can say it's going to be up to you know your honors to decide what is reasonable I can honestly say that each and every minute is the time I spent on the case and they're reasonable requests the few requests are reasonable what the trial court did was reasonable in finding their lawsuit was reasonably necessary to get the documents I think Mr. Lindsey said you know took issue with me saying they're obsolete traffic studies if you look at the briefs and the record what happened Joliet admitted the I think Mr. Regis admitted that the traffic studies were obsolete that doesn't mean they didn't have any traffic studies they're proceeding with no viable or meaningful traffic studies which you know helps stop North Point's case and really benefited the public knowing that you know Joliet is proceeding in such an irresponsible manner allowing requiring Dunkin Donuts to have a traffic study but a billion dollar project hey we don't need a viable traffic study so in conclusion we do request the relief request in our cross appeal and yeah I want to thank the court for its time and if your honors have any question questions I'll be happy to answer any are there any additional questions no thank you okay we thank both of you for your arguments this afternoon we'll take the matter under advisement and we'll issue a written decision as quickly as possible the court will now stand in brief recess for a panel change